1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF WASHINGTON**

7 OLETA MATTHEWS, | No. 2:16-cv-00191-FVS

8          Plaintiff, | ORDER GRANTING PLAINTIFF'S

9   vs. | MOTION FOR SUMMARY JUDGMENT AND DENYING

10 COMMISSIONER OF SOCIAL | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

11 SECURITY, | ECF Nos. 16, 22

12         Defendant.

13     BEFORE THE COURT are the parties' cross-motions for summary

14 judgment. ECF Nos. 16, 22. This matter was submitted for consideration without

15 oral argument. Plaintiff was represented by attorney Howard Olinsky. Defendant

16 was represented by Special Assistant United States Attorney L. Jamala Edwards.

17 The Court, having reviewed the administrative record and the parties' briefing, is

18 fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 16,

19 is granted and Defendant's Motion, ECF No. 22, is denied.

20

# JURISDICTION

Plaintiff Oleta Matthews protectively filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") on July 31, 2012. Tr. 266-76, 319. Plaintiff alleged an onset date of January 1, 2010. Tr. 266, 273. Benefits were denied initially (Tr. 169-72) and upon reconsideration (Tr. 183-84). Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 18, 2014. Tr. 42-83. On November 21, 2014, the ALJ denied Plaintiff's claim (Tr. 24-33), and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Oleta Matthews ("Plaintiff") was 60 years old at the time of the hearing. Tr. 42. She went to school through the ninth grade. Tr. 42. She was in special education most of her life. Tr. 61. She lives with a number of family members. Tr. 65. Her work history includes: home attendant, janitor, laundry worker, nurse assistant, and child monitor. Tr. 49. She last worked as a babysitter for her niece. Tr. 50.

Plaintiff testified she has pain on her left side from her neck to her shoulder and in her middle back, lower back, and on the ball of her left foot.  Tr. 52, 55-56.  She also has pain in her right hand.  Tr. 52-53.  She testified pain limits her ability to throw, pull, grip, and reach.  Tr. 52-53, 56.  She can stand or sit for about 10 minutes at a time.  Tr. 53, 64.  She spends almost half the day reclining.  Tr. 54.  She has hepatitis C.  Tr. 52.  Plaintiff uses inhalers a few times per week for COPD.  Tr. 56.  She experiences shortness of breath upon standing.  Tr. 57.  She can walk about a block and a half to two blocks.  Tr. 57.

She experiences depression, though medication has helped.  Tr. 56, 63.  She has anxiety when she is around people.  Tr. 57-58.  She has quit jobs in the past due to arguments with coworkers.  Tr. 59-60.  She has difficulty focusing while reading and doing chores.  Tr. 60-61.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

# ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. Tr. 26. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease, affective disorder, anxiety disorder, and substance addiction disorder. Tr. 26. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 27. The ALJ then found:

> [T]he claimant has the residual functional capacity to perform medium work, which is defined in 20 CFR 404.1567(c) and 416.967(c) as work involving lifting and carrying 50 pounds occasionally and 25 pounds frequently. The claimant can stand and/or walk, with normal breaks, for a total of five hours in an eight-hour workday. She can sit, with normal breaks, for a total of six hours in an eight-hour workday. She can never climb ladders, ropes, or scaffolds. She can never reach overhead bilaterally. She can complete unskilled, simple, and routine tasks with customary breaks and lunch. She can have occasional contact with co-workers for work tasks with the average occurrence lasting for 15 minutes or less. She can have frequent contact with the supervisor with the average occurrence being 15 minutes. There should be an emphasis on occupations/duties dealing with things and objects rather than people.

Tr. 28. At step four, the ALJ found Plaintiff is capable of performing past relevant work as a laundry worker. Tr. 32. Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of the decision. Tr. 32.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 16. Plaintiff raises the following issues for review:

1. Whether the ALJ improperly found Plaintiff has past relevant work;

2. Whether the ALJ improperly rejected medical opinion evidence;

3. Whether the ALJ improperly rejected Plaintiff's testimony; and

4. Whether the hypothetical to the vocational expert included all of the limitations supported by substantial evidence.

ECF No. 16 at 10-18.

**DISCUSSION**

**A.  Past Relevant Work**

Plaintiff contends the ALJ improperly found that her work as a laundry worker qualifies as past relevant work at step four of the sequential evaluation. ECF No. 16 at 11-12. Past relevant work is work that was "done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full- or part-time basis, and "is the kind of work usually done for pay or profit." 20

C.F.R. §§ 404.1572, 416.972.  Generally, if a claimant works for substantial

earnings as described in the regulations, the work is found to be substantial gainful

activity.  20 C.F.R. §§ 404.1574(a), 416.974(a).  However, if average monthly

earnings are less than the amount described in the regulations, it is presumed that a

claimant has not engaged in substantial gainful activity.  20 C.F.R. §§

404.1574(b)(3); 416.974(b)(3).

The ALJ found Plaintiff is capable of past relevant work as a laundry

worker.  Tr. 32.  In 2012, the only year Plaintiff testified she worked in the laundry

room of a motel, earnings averaging more than $1,010 per month constituted

substantial gainful activity.  *See* 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2); *see*

*also* Social Security Administration, *Program Operations Manual*, DI

10501.015(B) (October 19, 2016).[1]  Plaintiff had total earnings of $3,686 for the

entire year in 2012, well below the substantial gainful activity threshold of $1,010

per month.  Tr. 285-86.  Thus, the presumption is that Plaintiff did not engage in

substantial gainful activity as a laundry worker in 2012.

Defendant suggests Plaintiff's testimony that she received a room instead of

payment for laundry work establishes a basis for the ALJ's finding that laundry

work is past relevant work.  ECF No. 22 at 16-17.  At the hearing, Plaintiff was

---

[1] *Available at* https://secure.ssa.gov/poms.nsf/lnx/0410501015.

asked about self-employment earnings from 2012. Tr. 47. Plaintiff testified that she did some babysitting and worked at a motel in 2012. Tr. 47. Then she said, "Not worked. Well, sort of . . . I worked in the laundry room for a room. That's all I got." Tr. 47. Later, she testified again that when she worked at the motel she was not paid but she got to stay in a room. Tr. 50. She estimated she worked about 14 hours per week at the motel. Tr. 51. However, there is no evidence in the record regarding the value of the hotel room or how long the arrangement existed to establish that her work in the motel laundry room constituted substantial gainful activity. Defendant failed to rebut the presumption that Plaintiff did not work at the level of substantial gainful activity. Thus, substantial evidence does not support the ALJ's step four finding. This is clear error.

Although Plaintiff urges the court to award benefits due to the error at step four, ECF No. 16 at 12, it is not clear from the record that Plaintiff is disabled. A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir.2005)). Remand is necessary to determine whether there are other jobs available in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2).

**B.      Adverse Credibility Finding**

Plaintiff contends the ALJ improperly rejected Plaintiff's testimony.  ECF No. 16 at 15-17.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. Tr. 29. The ALJ gave two reasons for the adverse credibility finding: (1) Plaintiff's activities are inconsistent with her allegations of disability; and (2) the treatment record is inconsistent with Plaintiff's allegations of disability. Tr. 29-31.

First, the ALJ found Plaintiff's activities generally reflect a level of functioning consistent with the residual functional capacity finding and inconsistent

with her claims of disability. Tr. 31. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Furthermore, "Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted that Plaintiff testified she cared for her grandchildren for the past several years. Tr. 31, 65-66. The ALJ found that, "Caring for children is both physically and mentally taxing and shows an ability to persist and interact with others." Tr. 31. However, the ALJ's findings about Plaintiff's child care activities are an overstatement in light of the evidence in the record. Plaintiff testified that she lives with two of her daughters, a daughter's boyfriend, the boyfriend's father, a granddaughter, a grandson, and a niece. Tr. 65. Plaintiff testified that her

granddaughter is 16 and her niece is six and that she receives financial assistance from the state for each of them. Tr. 65-66. She testified that she walks a child across the street to school; she watches movies and talks with "her kids"; she has visited the granddaughter's school to talk about her absences; she goes out in the backyard with them while they use the swimming pool. Tr. 69-71. None of these activities is inconsistent with Plaintiff's alleged limitations. There is no other testimony about Plaintiff's child care duties, the length of time she has been caring for them, or the contributions of other family members living in the home.[2] Thus, substantial evidence does not support the ALJ's finding.

The ALJ also cited testimony from Plaintiff that she walks around town, does not drive, and grocery shops regularly. Tr. 31. According to the ALJ, this shows "a physical ability for prolonged walking and an ability to lift and carry within the limits of the residual functional capacity." Tr. 31. Again, the ALJ overstated Plaintiff's testimony. Plaintiff testified that she had stopped driving "not quite a year ago." Tr. 66. She initially stated she walks to town, but further testimony revealed that she

---

[2] By the ALJ's reasoning, no parent of a minor child could ever be disabled, because the physical and relational needs of any children in the home would signify the capacity to work. This, of course, is not a reasonable conclusion in every situation and the ALJ failed to support such a conclusion in this situation.

meant she walks to the bus stop to take a bus to town because, "I can't walk back from Walmart because it is [like] three miles or so. I have to take the bus. I live out of town." Tr. 68. There is no testimony regarding the distance to the bus stop and there is simply no basis to characterize the walking Plaintiff testified to doing as "prolonged." Tr. 31. Furthermore, the ALJ cites no testimony about the frequency of Plaintiff's trips to Walmart, so there is no support for the finding that Plaintiff shops on a "regular basis." Tr. 31. Even if the very limited evidence about Plaintiff's shopping trips could be considered to support the ALJ's finding, it does not rise to the level of a clear and convincing basis for the adverse credibility finding. Thus, the ALJ's findings regarding Plaintiff's daily activities are not legally sufficient.

Second, the ALJ found the physical and psychological treatment record is inconsistent with disability. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair,* 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2) (2011), 416.929(c)(2)

(2011);[3] *see also* S.S.R. 96-7p.[4] Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The only other reason cited by the ALJ in support of the negative credibility finding involves Plaintiff's daily activities and is legally insufficient. Thus, because minimal objective evidence cannot stand alone as the basis for a negative credibility finding, the ALJ's credibility finding is inadequate. As a result, on remand, the ALJ should make a new credibility determination.

---

[3] These regulations were revised effective March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5871 (January 18, 2017). Since the revision was not effective at the time of the ALJ's decision, it does not apply to this case.

[4] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016. The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms. S.S.R. 16-3p at *6. Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

## C.    Medical Opinion Evidence

Plaintiff next contends the ALJ improperly rejected the opinions of Aaron Burdge, Ph.D.; Edward Liu, ARNP; Laurie Jones, MSW; Nancy Schwarzkopf, ARNP; and Joyce Nineman, ARNP.  ECF No. 16 at 12-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-31.

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d) (2013), 416.913(d) (2013).[5] However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-

_____

[5] These regulations were revised effective March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 15132 (March 27, 2017). Since the revision was not effective at the time of the ALJ's decision, it does not apply to this case.

medical testimony can never establish a diagnosis or disability absent

corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462,

1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

1993), an ALJ is obligated to give reasons germane to "other source" testimony

before discounting it.

The ALJ gave the same reasons for assigning little weight to the opinions of

five medical providers:

1. Aaron Burdge, Ph.D., an examining physician, completed a

psychological evaluation in January 2014. Tr. 577-82. He diagnosed major

depressive disorder, recurrent, moderate; dysthymic disorder; attention-

deficit/hyperactivity disorder NOS; and anxiety disorder NOS, with PTSD and

social like features. Tr. 579. Dr. Burdge assessed marked limitations in five areas

of basic work activity: the ability to understand, remember, and persist in tasks by

following detailed instructions; the ability to perform activities within a schedule,

maintain regular attendance, and be punctual; the ability to communicate and

perform effectively in a work setting; the ability to complete a normal workday and

work week without interruptions from psychologically based symptoms; and the

ability to maintain appropriate behavior in a work setting. Tr. 579-80.

2. Edward Liu, ARNP, an "other source" under the regulations, opined

in November 2012 that Plaintiff could not work. He diagnosed degenerative disc

disease of the cervical spine and found her symptoms would frequently interfere with the attention and concentration to perform simple work-related tasks; she would need to lie down outside of normally scheduled breaks during an eight-hour workday; she would need to take unscheduled breaks up to every hour; she could sit, stand, and walk for one hour each during an eight-hour workday; she could occasionally lift up to 10 pounds; and has limitations on reaching. Tr. 507-08.

3. Laurie Jones, MSW, is an "other source" who stated in October 2012 that Plaintiff could not work with or around others, and that Plaintiff had 11 extreme and seven marked functional limitations. Tr. 509-11.

4. Nancy Schwarzkopf, ARNP, an "other source," indicated in April 2013 Plaintiff could not return to work and could not lift. Tr. 709.

5. Joyce Ninemann, ARNP, an "other source," opined in June 2014 that Plaintiff has nine marked functional limitations, including a marked limitation in the ability to complete a workday; and that Plaintiff would miss four or more days of work per month. Tr. 736-38.

The ALJ gave the same reasons for rejecting the opinions of all five providers: "These opinions are inconsistent with the claimant's longitudinal history, her performance on mental status examinations, and her reported activities. The claimant has reported depression and anxiety, but her examinations have been otherwise unremarkable. She has also had unremarkable physical examinations."

Tr. 32.

The Court finds the ALJ's reasons are inadequate. An examiner's findings should be as comprehensive and analytical as feasible so that a reviewing court may know the basis for the decision. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). Here, the ALJ's statements are not explained or supported by citations to the medical opinions rejected.

Furthermore, to the extent the ALJ's reasoning could be supported by the discussion of similar reasons in the credibility portion of the decision (although this is not so indicated by the ALJ), the ALJ's reasons are still insufficient. With regard to daily activities, as discussed *supra*, the record is undeveloped as to Plaintiff's child care duties. Thus, the ALJ improperly relied on Plaintiff's childcare activities to reject the five medical opinions. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). Similarly, Plaintiff's ability to walk to a bus stop and grocery shop periodically does not, without further development of the record, establish that the medical opinions rejected by the ALJ are inconsistent with Plaintiff's activities. *See id; see also Popa v. Berryhill*, No. 15-16848, 2017 WL 4160041, at *4 (9th Cir. Aug. 18, 2017). As for the longitudinal record and

the ALJ's characterization of "unremarkable" exams throughout the record, the ALJ simply recited numerous exam findings supporting the ALJ's conclusions without addressing the specific opinions rejected or the findings favorable to Plaintiff. Tr. 29-30. This is insufficient. *See Trevizo*, 871 F.3d at 677; *Embrey*, 849 F.2d at 421–22.

On remand, the ALJ should reconsider the medical opinion evidence and provide legally sufficient reasons and adequate explanation for rejecting any opinions.

**D.    Hypothetical**

Lastly, Plaintiff contends the hypothetical posed by the ALJ to the vocational expert was invalid. ECF No. 16 at 17-18. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Because the ALJ's other findings were insufficient, the ALJ's reliance on a hypothetical posed to the vocational expert based on those findings is also suspect. *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Bayliss*, 427 F. 3d at 1217-18. Thus, on remand, if warranted after reconsideration of the evidence, the ALJ should submit a new hypothetical to the vocational expert.

**CONCLUSION**

After reviewing the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Because of the clear error at step four and other errors in evaluating the evidence, remand is necessary. On remand, the ALJ should reconsider the evidence, make a new credibility determination, and conduct a new sequential evaluation analysis, ensuring all findings are supported by legally sufficient reasoning and are adequately explained.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, is GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 22, is DENIED.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and forward copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED November 13, 2017.

*s/Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge
